UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK
_____

DUANE ELLIOTT PRICE, SR.,



                                    Plaintiff,

                                                            DECISION AND ORDER

                                                            04-CV-6487L

            v.

DAN ENGERT,
DERRICK BREVARD,
TOM SHANLEY,
ROGER HUBER,
STEVE GODFRY,
DEBBIE ROILL,
JEFF PHIPPS,
JIM PAYNE,
CHRISTOPHER AIKIN,
of the Niagara County Jail Medical Department,

                                    Defendants.
_____

INTRODUCTION

Plaintiff Diane Elliott Price, Sr. ("Price"), proceeding *pro se*, brings this action against defendants Dan Engert ("Engert"), Derrick Brevard ("Brevard"), Tom Shanley ("Shanley"), Roger Huber ("Huber"), Steve Godfry ("Godfry"), Debbie Roill ("Roill"), Jeff Phipps, ("Phipps"), Jim Payne ("Payne"), and Christopher Aikin ("Aikin"). Price alleges that several of the defendants assaulted him during a Correctional Emergency Response Team ("CERT") intervention at the

Niagara County Jail on July 21, 2004, and that the remaining defendants denied him medical care, all in violation of his Eighth Amendment rights and 42 U.S.C. § 1983.

On July 21, 2004, Price was detained in a group hold cell at the Niagara County Jail, following his return from an appearance in Niagara County Family Court. Price became agitated, yelling and throwing food trays, and ignored instructions from correction officers to calm down. The CERT team was summoned and attempted to restrain Price for transport. Price alleges that during this altercation, he was assaulted by the defendant CERT team members and other officers in the following ways: (1) Officer Payne ordered the team members to subdue Price; (2) Officer Godfry forced Price to the ground and forcibly bent Price's right wrist in order to place Price in handcuffs; (3) Officer Shanley forced Price to the ground and forcibly bent Price's left wrist in order to place Price in handcuffs; (4) while Price was in handcuffs, Officers Huber and Brevard threw Price to the ground, took hold of Price's left leg and bent it at the knee, and (5) Officer Engert ordered Price to be taken down and sprayed pepper spray in Price's mouth and nose.

Immediately following the altercations, Price was seen by defendant Nurse Roill, who found no evidence of acute injury. Plaintiff was given ice for his right hand and left knee, and instructed to be seen in sick call as needed. Price alleges that later that day or the next, defendant Officer Phipps refused to provide him with an ice pack.

Several days later, plaintiff was examined during sick call by defendant Nurse Practitioner Aikin. Aikin noted that despite tenderness in plaintiff's right hand and left knee, there was no swelling, discoloration or loss of range of motion. Aikin prescribed aspirin and a thumb splint and

referred Price to an orthopedic surgeon to examine Price for a potential nervicular or meniscal injury. X-rays ordered by Aikin showed no fractures to Price's hand, wrist or knee.

On July 28, 2004, Price filed a grievance claiming that he has been assaulted by the CERT team on July 21, 2004, and requesting that its members be fired. The grievance was investigated and a hearing was conducted. The Grievance Officer concluded that the CERT team's response was appropriate, and that any injuries that resulted were due to Price's admitted failure to obey lawful orders, and his physical aggression toward the officers. On appeal, the Grievance Officer's determination was affirmed by the facility superintendent. A copy of the grievance filed was forwarded to the State Commission of Correction ("SCC") for appeal, but the SCC declined to process it because Price's initial grievance, submitted more than five days after the complained-of incident, was untimely.

On July 20, 2004, Price was sent to see orthopedic specialist Robert M. Bauer. Dr. Bauer examined Price and reviewed his medical history, including the x-rays of Price's hand, wrist and knee. Dr. Bauer diagnosed a sprained wrist and knee contusion, and did not recommend any further testing or treatment.

Price was seen again by Aikin on August 6, 2004. Price had returned to playing basketball at recreation, and showed no sign of injury, other than a contusion or sprain of the right wrist and left knee. His prescription for aspirin was continued and he was directed to refrain from activity during recreation time.

On September 17, 2004, Price filed a grievance alleging that Phipps had denied him an ice pack on July 21, 2004.

Price commenced the instant action on October 7, 2004, alleging that defendants violated his constitutional rights by inflicting excessive force upon him, failing to protect him, denying him due process and equal protection of the law and denying medical treatment.[1]

The defendants now move for summary judgment pursuant to FED. R. CIV. P. 56 to dismiss Price's claims (Dkt. #53, #54). In response, Price has moved to dismiss the defendants' dispositive motions (Dkt. #59). For the reasons set forth below, the defendants' motions are granted, Price's motion is denied, and the complaint is dismissed.

## DISCUSSION

### I. Summary Judgment

Summary judgment will be granted if the record demonstrates that "there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." FED. R. CIV. P. 56(c). *See also Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 247 (1986). "When the moving party has carried its burden under Rule 56(c), its opponent must do more than simply show that there is some metaphysical doubt as to the materials facts.... Where the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no 'genuine issue for trial.'" *Matsushita Elec. Industrial Co. v. Zenith Radio Corp.,* 475 U.S. 574, 586-587 (1986).

---

[1] During the pendency of this litigation, plaintiff has been seen again by Aikin on myriad occasions, principally complaining of left knee pain. Examinations and x-rays demonstrated no acute injuries, and Price retained a full range of motion. Price was prescribed aspirin, Motrin and later Celebrex for pain, and was instructed to perform stretching exercises and to follow up with an orthopedist upon his release, for possible elective treatment. During this period, Price has been discharged and reincarcerated at least twice, and has not sought any elective treatment during the several cumulative months of his release.

Where, as here, the parties opposing summary judgment are proceeding *pro se,* the Court must "read the pleadings ... liberally and interpret them to raise the strongest arguments that they suggest." *Corcoran v. New York Power Auth.,* 202 F.3d 530, 536 (2d Cir. 1999). Nevertheless, "proceeding *pro se* does not otherwise relieve [an opposing party] from the usual requirements of summary judgment." *Fitzpatrick v. N.Y. Cornell Hosp.,* 2002 U.S. Dist. LEXIS 25166 at *5 (S.D.N.Y. 2003). Those requirements include the obligation not to rest upon mere conclusory allegations or denials, but instead to set forth "concrete particulars" showing that a trial is needed. *R.G. Group, Inc. v. Horn & Hardart Co.,* 751 F.2d 69, 77 (2d Cir. 1984).

## II.    Plaintiff's "Failure to Treat" Claims

The Prison Litigation Reform Act of 1995 ("PLRA") requires that prior to commencing litigation, a prisoner must exhaust all available administrative remedies. 42 U.S.C. § 1997e(a). The requirement pertains to "all inmate suits about prison life, whether they involve general circumstances or particular episodes, and whether they allege excessive force or some other wrong." *Porter v. Nussle,* 534 U.S. 516, 532 (2002). *See also Presslar v. Tan,* 2003 U.S. Dist. LEXIS at 2688 at *8 (W.D.N.Y. 2003).

The administrative remedies applicable to county jail inmates initially require the submission of a grievance within five days of the relevant occurrence, to the Inmate Grievance Coordinator ("IGC"). *See* 9 NYCRR § 7032.4(d). The inmate may appeal the IGC's determination to the facility superintendent, and then appeal the superintendent's decision to the SCC. *See* NYCRR § 7032.5.

All levels of the grievance procedure must be exhausted before an inmate may commence litigation. *See Porter,* 534 U.S. 516 at 524; *Boomer v. DePerio,* 405 F.Supp.2d 259, 262 (W.D.N.Y. 2005).

Although Price testified at his deposition that he was aware of the grievance procedure at the Niagara County Jail, it is undisputed that he never submitted a grievance relative to his complaint that he was denied medical treatment until September 20, 2005, more than a year after this action was commenced. Clearly, Price failed to exhaust his administrative remedies prior to commencing this action, and dismissal is appropriate.

Furthermore, even if Price had exhausted his administrative remedies, I find that defendants are entitled to summary judgment on his failure to treat claim. In order to maintain a claim for denial of medical care under Section 1983, Price must show that the defendants violated his constitutional or federal statutory rights -- here, his Eighth Amendment right to be free from cruel and unusual punishment -- and that defendants did so while acting under color of state law. *See Parratt v. Taylor,* 451 U.S. 527, 535 (1981).

To establish that medical treatment amounts to "cruel or unusual punishment" prohibited by the Eighth Amendment, a plaintiff must prove that a provider's actions or omissions amounted to "deliberate indifference to a serious medical need." *Estelle v. Gamble,* 429 U.S. 97, 106 (1976). A "serious medical need" has been defined as one which presents "'a condition of urgency' that may result in 'degeneration' or 'extreme pain.'" *Chance v. Armstrong,* 143 F.3d 698, 702 (2d Cir. 1998), *quoting Hathaway v. Coughlin,* 37 F.3d 63, 66 (2d Cir. 1994)).

In determining whether a serious medical need exists, the Court examines several factors, including whether the plaintiff has "an injury that a reasonable doctor or patient would find

important and worthy of comment or treatment; the presence of a medical condition that significantly affects an individual's daily activities; or the existence of chronic and substantial pain." *Chance,* 143 F.3d 698 at 702. At the same time, "[a]n assertion of pain sensation alone, unaccompanied by any large medical complications, does not amount to a serious medical need under the Eighth Amendment." *Livingston v. Goord,* 225 F.Supp.2d 321, 329 (W.D.N.Y. 2002).

To establish deliberate indifference, a plaintiff must prove that the defendants had a culpable state of mind and intended to wantonly inflict pain. *See Wilson v. Seiter,* 501 U.S. 294, 298-99 (1991); *Ross v. Kelly,* 784 F.Supp. 35, 44 (W.D.N.Y.) *aff'd,* 970 F.2d 896 (2d Cir. 1992).

Here, Price complained of injuries to his left knee, right wrist and right hand. He was variously examined by Roill, Aikin, and two different physicians, to ascertain the cause of his alleged pain. X-rays were taken on multiple occasions, and were negative for fractures. Price evinced no limitations in his range of motion, and no objective findings ever indicated any serious injury. *See e.g., Chatin v. Artuz,* 28 Fed. Appx. 9, 10 (2d Cir. 2002) (sprained ankle, bone spur and enlarged nerve are not sufficiently serious to support an Eighth Amendment claim); *Johnson v. Wright,* 477 F.Supp2d 572, 575 (W.D.N.Y. 2007)(medical conditions and knee injuries such as a torn meniscus, arthritis, and ligament tears are not "sufficiently serious"). In fact, two weeks after receiving his alleged injuries, plaintiff was able to play basketball, suggesting that he was not in serious pain and that his injuries did not interfere with his daily activities.

Based on the foregoing facts, I find that Price did not suffer from a serious medical need, let alone that Roill, Aikin, or Phipps acted with wanton disregard for such a need, and Price's claim that he was unlawfully denied medical treatment must be dismissed.

### III. Plaintiff's Excessive Force Claims

Initially, Price's claims against the remaining officers are also subject to dismissal for failure to exhaust administrative remedies, since it is undisputed that Price's grievance relative to the July 21, 2004 incident was not filed until July 28, 2004. As such, the grievance falls outside of the five-day limitation period prescribed by 9 NYCRR § 7032.4(d), and it is untimely.

Furthermore, even if Price's grievance had been timely filed and his administrative remedies properly exhausted, I find that his claims of excessive force must nonetheless be dismissed on the basis of the defendants' qualified immunity.

Qualified immunity shields public officials from liability for civil damages, to the extent that their conduct does not violate "clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald,* 457 U.S. 800, 818 (1982). The doctrine applies where it is "objectively reasonable" for an official to believe that his conduct did not violate such a right, in light of clearly established law, and the information possessed by the official. *See Simms v. Village of Albion,* 115 F.3d 1098, 1106 (2d Cir. 1997); *Hill v. City of New York,* 45 F.3d 653, 661 (2d Cir. 1995). In determining whether defendants are entitled to qualified immunity, the Court must focus on "objective circumstances rather than an officer's subjective motivation." *Bradway v. Gonzales,* 26 F.3D 313, 319 (2d Cir. 1994).

As previously noted, the undisputed facts presented here establish that the force that was used against Price was exerted in response to Price's refusal to comply with directives to "calm down" his physically aggressive behavior. Indeed, Price admitted at his deposition that he was creating a disturbance inside the group holding cell, pounding on the glass, yelling at the officers stationed

- 8 -

outside, and knocking over meal trays inside the cell. Due to several prior incidents of aggressive behavior by Price toward Niagara County Jail inmates and staff, and convictions for resisting arrest and assault, Price had been identified as a "Security Risk" inmate. His violent history was known to the defendant officers. No evidence has been presented that a reasonable officer could have believed that the CERT team's response -- subduing a violent and uncooperative Price with pepper spray and placing handcuffs on him -- violated Price's constitutional rights.

Accordingly, Price's excessive force claims must be dismissed.

## IV.    Plaintiff's Failure to Protect Claim

Price's failure to protect claim is also subject to dismissal for failure to exhaust his administrative remedies because he never filed a grievance relative to that claim. *See Colon v. Furlani,* 2008 U.S. Dist. LEXIS 94154 at *3-*4 (W.D.N.Y. 2008) (dismissing "failure to protect" claim due to plaintiff's failure to satisfy the exhaustion requirement of the PLRA).

Moreover, even if Price had exhausted his remedies concerning his failure to protect claim, a plaintiff must show that prison officials acted with "deliberate indifference" to t heir safety: "the plaintiff must show that 'he [wa]s incarcerated under conditions posing a substantial risk of serious harm,' and that the prison official had 'knowledge that [the] inmate face[d] a substantial risk of serious harm and . . .disregard[ed] that risk by failing to take reasonable measures to abate the harm.'" *Id.* (*quoting Hayes v. New York City Dep't of Corr.,* 84 F.3d 614, 620 (2d Cir. 1996).

No such showing has been made here. Price has provided no evidence that he was subjected to a substantial risk of harm. Price admits that the officers' attempts to restrain him were undertaken

only after Price became violent and belligerent and refused to comply with instructions to calm down. Indeed, the only risk of harm of which the officers were undisputably aware was the risk that Price would harm himself or others. I find that the defendant officers' response to that threat, which included verbal warnings, the placement of handcuffs on Price's wrists and the use of pepper spray, was reasonable and posed no serious threat of harm to Price. Accordingly, Price's failure to protect claim must be dismissed.

I have examined the remainder of Price's claims concerning denial of equal protection and due process, and find them to be without merit.

## CONCLUSION

For the foregoing reasons, I find that there are no material issues of fact, and that defendants are entitled to judgment as a matter of law. Accordingly, defendants' motions for summary judgment dismissing the complaint (Dkt. #53, #54) are granted, and the complaint is dismissed in its entirety, with prejudice. Plaintiff's motion to dismiss the defendants' motions (Dkt. #59) is denied.

IT IS SO ORDERED.

_____
DAVID G. LARIMER
United States District Judge

Dated: Rochester, New York
December 10, 2008.